**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GABRIELLA DAROZA,<br><br>Plaintiff,<br><br>v.<br><br>REGENERON PHARMACEUTICALS, INC. and CINDY MYERS, in her individual and professional capacities,<br><br>Defendants. | Civil Action No.:<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Gabriella DaRoza ("Plaintiff"), by and through her undersigned counsel, Grubin Law Group, P.C., hereby alleges as follows against Defendant Regeneron Pharmaceuticals, Inc. ("Regeneron" or the "Company") and Cindy Myers ("Ms. Myers" and, together with Regeneron, "Defendants").

**NATURE OF THE CLAIMS**

1. Defendant Regeneron Pharmaceuticals Inc. is a leading biotechnology giant, with groundbreaking research and new pharmaceuticals making the Company's hallmark.

2. Since 2015, the Company has dedicated a major portion of its research and development efforts to cancer research and has developed numerous promising treatments for lung cancer and skin cancer, among others.

3. In 2024, Regeneron reported over $14 billion in revenue and its executives are among the most highly compensated in the entire industry.

4. Despite the Company's vast resources and its purported dedication to treating and curing cancer efficiently and humanely, in practice Regeneron has utterly failed to live up to these

values.

5. Indeed, Regeneron's treatment of Plaintiff Gabriella DaRoza is not only a disgraceful example of that failure but unlawful.

6. Ms. DaRoza is an experienced executive in the pharmaceutical world, having spent her entire career in the industry to great success.

7. In fact, Regeneron aggressively pursued Ms. DaRoza in order to bring her on and jumpstart the Company's entry into pharma-oncology.

8. Ms. DaRoza lived up to her reputation, earning a promotion in 2023 and garnering excellent results for the Company, as evidenced by her performance reviews.

9. In November 2024 Ms. DaRoza received a devastating diagnosis of breast cancer.

10. This diagnosis resulted in her taking protected medical leave from January to April 2025 to undergo breast cancer treatments with her surgeon, radiation oncologist and medical oncologist.

11. Compounding her illness and complicating her recovery, Ms. DaRoza was diagnosed with an incurable auto-immune disease, lupus, shortly after she began her leave.

12. Upon her return from this relatively short leave, Ms. DaRoza was shocked to suddenly find herself almost immediately under intense scrutiny and criticism.

13. It became painfully clear that the Company, through Defendant Myers, intended to push her out for blatantly discriminatory and retaliatory motives for the simple reason that she had taken leave and returned with a chronic condition.

14. Barely two months after her return to work, Defendant Myers delivered a scathing performance review threatening Ms. DaRoza's job – the complete opposite of her previous reviews – that was nothing more than a pretextual baseline to justify terminating Ms. DaRoza.

15. And indeed, less than six months after her return, Defendants did terminate Ms. DaRoza, for these same wholly pretextual reasons.

16. After dedicating herself so completely to recovery and returning to work less than four months after beginning cancer treatment, Ms. DaRoza is devastated by Defendants' treatment of her.

17. While she *hoped* that Regeneron, as a global leader in cancer research, would treat her with respect, empathy and fairness as she recovered from cancer and a concurrent diagnosis of lupus, and under the additional burden of being the sole breadwinner for her family, including three children in college; she *expected* that at the bare minimum Defendants would respect her legal rights.

18. Yet incredibly, Regeneron did neither, as it fabricated a rationale to terminate her for discriminatory and retaliatory motives.

19. To redress these wrongs, Ms. DaRoza brings claims for violations of: (a) the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq*. (the "FMLA"); (b) the California Fair Employment and Housing Act ("FEHA"), Government Code § 12900 *et seq*.; (c) the California Family Rights Act ("CFRA"), Government Code § 12945.1 *et seq*.; (d) California Labor Code §§ 233, 234, and 246.5; and (e) California public policy prohibiting wrongful termination.

## JURISDICTION AND VENUE

20. Pursuant to 28 U.S.C. §§ 1331 and 1343, this Court has subject matter jurisdiction over this action because it involves federal questions regarding the deprivation of Plaintiff's rights under the FMLA.

21. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's related claims arising under State law.

22. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this District.

**ADMINISTRATIVE PREREQUISITES**

23. On December 10, 2025, Plaintiff filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging claims against Defendant Regeneron Pharmaceuticals under the Americans with Disabilities Act, as amended, 42 U.S.C. §§ 12101, *et seq*. (the "ADA").

24. Following her receipt of a Notice of Right to Sue from the EEOC, Plaintiff intends to seek leave of the Court to file an Amended Complaint alleging, *inter alia*, additional claims under the ADA.

25. On April 1, 2026 Plaintiff exhausted her administrative remedies by timely filing a complaint against Defendant Regeneron with the California Civil Rights Department ("CCRD") pursuant to §12900 *et seq.* of the California Government Code, alleging the claims described in this Complaint.

26. The CCRD issued a Right to Sue letter on April 1, 2026, and Plaintiff filed this action within one year of issuance of the Right to Sue Letter.

27. Any and all other prerequisites to the filing of this action have been met.

**PARTIES**

**A. Plaintiff Gabriella DaRoza**

20. Plaintiff is a resident of the State of California.

21. Plaintiff was employed by Defendant in their office located at 777 Old Saw Mill River Road, Tarrytown, NY 10591, working remotely from California, from in or around August

2020 through on or around September 29, 2025.

22. Plaintiff was a full-time employee of Defendant and, at all relevant times, worked at least 1,250 hours in any 12-month period, including the 12-month period preceding her FMLA qualifying leave and the subsequent termination of her employment.

23. At all relevant times, Plaintiff was an "employee" of Defendants Regeneron and Myers within the meaning of all relevant statutes and applicable regulations thereunder.

**B. Defendant Regeneron Pharmaceuticals, Inc.**

24. Regeneron Pharmaceuticals is a domestic corporation with its principal place of business located at 777 Old Saw Mill River Road, Tarrytown, NY 10591.

25. Regeneron employs 50 or more employees within a 75-mile radius of the location where Plaintiff worked.

26. At all relevant times, Regeneron established, implemented, disseminated, and controlled all of the employment policies applicable to Plaintiff.

27. At all relevant times, Regeneron controlled and directed the terms and conditions of Plaintiff's employment.

28. At all relevant times, Regeneron maintained and exercised the power to hire, fire, discipline, and promote Plaintiff.

29. At all relevant times, Regeneron was an "employer" within the meaning of all relevant statutes and applicable regulations thereunder.

**C. Defendant Cindy Myers**

30. Defendant Cindy Myers is, upon information and belief, a resident of the State of Florida.

31. Defendant Myers is the Senior Director of Oncology GPOs[1] and Account Management for Defendant Regeneron.

32. At all relevant times, Defendant Myers controlled and directed the terms and conditions of Plaintiff's employment.

33. At all relevant times, Defendant Myers maintained and exercised the power to hire, fire, discipline, and promote Plaintiff.

34. At all relevant times, Defendant Myers was an "employer" within the meaning of all relevant statutes and applicable regulations thereunder.

## FACTS

### I. Ms. DaRoza's Excellent Performance with Regeneron

35. As GPO National Account Director, Ms. DaRoza brought her extensive experience in pharmaceutical sales and account management to Regeneron.

36. Since joining Regeneron in 2020, Ms. DaRoza has had account responsibility for national GPOs and physician cancer networks including McKesson, US Oncology, Onmark and ONCare, negotiating contracts for pharmaceuticals and executing marketing events.

37. McKesson represents approximately 45% of Regeneron's GPO business, or approximately $225M/year of Regeneron's total Oncology business in the United States.

38. Indeed, as the market evolves, McKesson in 2025 is now the single largest Oncology GPO in the USA.

39. As part of her role, Ms. DaRoza was also responsible for a multi-million-dollar budget for marketing media spend, data projects, meeting sponsorships, and brand awareness within the community oncology marketplace.

---

[1] "GPO" refers to "Group Purchasing Organizations." GPOs are entities that oversee buying for healthcare providers, negotiating with manufacturers, distributors and suppliers for contracts.

40. As she had with similar positions she has held with other pharmaceutical companies since 2002, Ms. DaRoza delivered stellar results for Regeneron.

41. By way of example, when Ms. DaRoza joined Regeneron in 2020 as a result of aggressive recruitment by the Company, she was the founding member of the Oncology GPO team, which grew under her leadership.

42. Ms. DaRoza's performance reviews speak to her success in the role, and she was promoted from Associate Director to Director in 2023 in recognition of her excellent performance.

43. Indeed, in 2023, Ms. DaRoza's manager, Defendant Myers gave her a positive performance review highlighting Ms. DaRoza's deep industry skills.

44. Again in December 2024, Defendant Myers lauded her for the "successful year," her "skilled" and "adept" networking, and her "unique ability" to lead and inspire her team.

45. Defendant Myers concluded her glowing review by stating that Ms. DaRoza is "a pleasure to work with" and that she "look[ed] forward to seeing what [Ms. DaRoza will] do in 2025."

## II. Ms. DaRoza is Diagnosed with Cancer and Returns to Work After Just Four Months

46. In or around November 2024, Ms. DaRoza was devastated to receive a diagnosis of breast cancer – her second cancer diagnosis in less than ten years, as she completed treatment for blood cancer in 2016.

47. She began her medical leave on January 1, 2025 and underwent grueling treatment to eradicate the cancer.

48. During that time, she was also diagnosed with lupus, an incurable auto-immune chronic disease that requires an intense pharmaceutical regimen to manage.

49. In an admirable display of inner strength, Ms. DaRoza doggedly returned to work

less than four months later, on April 18, 2025, determined not to allow cancer to prevent her from doing her job.

50. And to be sure, Ms. DaRoza was confident that Regeneron, as a global leader in groundbreaking cancer research, would give her the accommodations and understanding she needed to get back to work.

51. At the very least, she expected to be welcomed back with understanding and given a fair opportunity to reintegrate herself into the fast-paced world of oncology and hematology.

52. Instead, Regeneron and Defendant Myers would set her up to fail and pushed her out of the Company entirely, barely five months after her return to work.

53. Immediately upon her return, Ms. DaRoza noticed a distinct change in attitude from Defendant Myers.

54. Without so much as a "welcome back" or inquiry about how Ms. DaRoza was feeling (physically or mentally), Defendant Myers coldly instructed Ms. DaRoza to speak with her two team members to get up to speed on developments during her absence.

55. In fact, their first meeting occurred in Orlando, Florida, where Ms. DaRoza flew for a conference a week after returning from leave.

56. Defendant Myers did not pause in her conversation when Ms. DaRoza approached or even acknowledge her presence.

57. From that moment, Ms. DaRoza was painfully aware that her relationship with Defendant Myers was different – but she could not immediately ascertain why.

58. Later, when Ms. DaRoza endeavored to speak with Defendant Myers about crucial GPO contract strategy, negotiations and McKesson account updates, Defendant Myers flatly refused and told Ms.DaRoza to reach out to her teammates for all updates.

59. It soon became clear that Defendant Myers had no intention of reintegrating Ms. DaRoza to the team, and instead was determined to push her out of Regeneron entirely.

60. By way of example, Defendant Myers cut Ms. DaRoza out of communication with McKesson without her knowledge, a move so strange that the external client pointed it out to Ms. DaRoza.

61. In May, only a few weeks after Ms. DaRoza's return to work, Defendant Myers demanded to be included on every prospective client call that Ms. DaRoza conducted – something that had never been requested of her before and that her team members were not required to do.

62. By way of further example, despite Ms. DaRoza's extensive business travel experience, Defendant Myers bizarrely became laser-focused on criticizing each and every travel decision Ms. DaRoza made.

63. Not only was such scrutiny unwarranted, but Defendants had never approached Ms. DaRoza this way prior to her diagnoses and medical leave and did not treat her peers in a similar manner.

64. Defendant Myers's myopic focus on Ms. DaRoza's travel came despite the fact such travel was pre-approved and met all of Regeneron's travel requirements – yet Defendant Myers apparently approached every interaction with Ms. DaRoza with mistrust and suspicion.

65. Similarly, Ms. DaRoza was shocked when Defendant Myers revealed that she had gone behind Ms. DaRoza's back to "ask around" concerning her comportment at a conference which Regeneron attended, and had purportedly gotten a single piece of mildly negative feedback.

66. Again, beginning on the very first day of her return to work, Defendant Myers grasped for pretextual reasons to criticize Ms. DaRoza and manufacture a case for her termination.

67. Defendants' motives could not be clearer, as Defendants began their campaign to

remove Ms. DaRoza from the Company immediately upon her return.

## III. Ms. DaRoza's 2024 Performance Review Lays Bare Regeneron's Discriminatory and Retaliatory Motives

68. By this time, barely two months back from leave, Ms. DaRoza was certain that Defendants were dedicated to pushing her out by any means necessary.

69. In June, Ms. DaRoza was proven correct when she received her 2025 mid-year performance review from Defendant Myers, delivered through the Company's HR portal.

70. Of course, Ms. DaRoza had been on medical leave for the first 15 weeks of the year, leaving less than three months of work to be evaluated.

71. Furthermore, her reviews in 2023 and 2024 had been excellent.

72. For her part, Ms. DaRoza detailed her numerous successes and works in progress in her employee portion of the 2025 review.

73. Ms. DaRoza certainly knew there could be bumps in the road as she got up to speed coming out of her leave, but nothing could have prepared her for Defendant Myers' written comments.

74. In no uncertain terms, Defendant Myers tore into Ms. DaRoza's "performance" unmercifully and without justification.

75. The review went on to list distorted, unfair or flatly untrue criticisms of Ms. DaRoza's performance in the less than three months since her return from leave.

76. The review even threatened Ms. DaRoza's job, declaring that her position was "in jeopardy."

77. For her part, Defendant Myers did not even have the courtesy to review her comments with Ms. DaRoza face-to-face.

78. These criticisms are the direct inverse of what is found in Ms. DaRoza's reviews

the previous four years - suggesting that the review itself was blatantly retaliatory.

79. Indeed, Defendant Myers' treatment of Ms. DaRoza from the moment she returned, so different from their previous interactions, points to a discriminatory and retaliatory motive for her criticisms of Ms. DaRoza as she created a pretextual basis for terminating her employment.

80. Defendants continued the campaign against Ms. DaRoza for the next several months.

81. Try as she might, nothing Ms. DaRoza did could repair the damage that her diagnosis with breast cancer and lupus and taking a medical leave for her treatment had done to her standing within the Company.

82. Defendant Myers refused to acknowledge Ms. DaRoza's efforts and results, such as grueling travel in order to conduct important customer meetings and continued to undermine her with clients at every turn.

83. Defendants seemed focused only on building a case to push Ms. DaRoza out, barely five months after she returned from her medical leave.

## IV. Defendants Terminate Ms. DaRoza's Employment a Mere Five Months After Her Return

84. On September 18, 2025, one day after she had submitted a written rebuttal to her mid-year review, Ms. DaRoza had a one-on-one meeting with Defendant Myers which she believed represented progress in their dealings with one another.

85. In fact, during that meeting, Defendant Myers listened as Ms. DaRoza detailed her significant strides in client relationships and passed on zero criticism on to Ms. DaRoza.

86. Yet the following day, she was disturbed to receive a canned email from Defendant Myers, parroting the exact language used in the mid-year review.

87. That email, purporting to reiterate their conversation from the day before, in fact

simply repeated verbatim the mid-year criticisms.

88. Though she was frustrated and upset, as it appeared she was back to square one with Defendant Myers through no fault of her own, Ms. DaRoza continued to work diligently, including creating the agenda for the team meeting which included two new Regional team members for a productive three-day trip to Charlotte, North Carolina the very next week.

89. After persevering through a difficult journey to recover from her second cancer, coping with the effects of a life-altering diagnosis of lupus, and doggedly returning to work, Ms. DaRoza was utterly devasted when, on September 29, Defendant Myers summarily terminated her employment via Zoom meeting, citing "not meeting job expectations" as the rationale.

90. Regeneron had not even given Ms. DaRoza six months back in the job while she was still recovering from the effects of radiation treatment and medication for lupus.

91. Instead, Defendants treated her as if she had simply achieved nothing in the first half of the year, as opposed to having taken an urgent medical leave of absence.

92. Ten weeks into her return to work, Defendants were already threatening, in writing, to terminate her.

93. Exactly three months after that, the campaign was complete and Ms. DaRoza was out of a job and her five years of excellent work completely disregarded.

94. The timeline could not be clearer that Ms. DaRoza was terminated as a result of discriminatory and retaliatory animus against her on the basis of her actual and perceived disability, her medical condition, and her medical leave.

95. As the primary breadwinner for her family, recovering from her second bout with cancer in ten years and a lifelong lupus diagnosis, the stress on Ms. DaRoza has been unimaginable.

96. Defendants' blatant campaign to push Ms. DaRoza out of her job, beginning the moment she returned from leave, added enormously to that distress.

97. Now, Ms. DaRoza is suddenly faced with returning to the job market, a truly daunting prospect as a consequence of Defendants' discriminatory and retaliatory actions.

98. Ms. DaRoza is 62 years of age, and at her career level, combined with the health challenges that she faces, finding a comparable position will be difficult if not impossible.

**FIRST CAUSE OF ACTION**
**FMLA: RETALIATION**
***Against All Defendants***

99. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

100. During the full statutory period, Plaintiff was protected by the provisions of the FMLA and all applicable regulations thereunder.

101. Specifically, Plaintiff was a full-time employee of Defendants and, at all relevant times, worked at least 1,250 hours in any 12-month period, including the 12-month period preceding her FMLA-qualifying leave and the subsequent termination of her employment.

102. Further, Defendant Regeneron employ 50 or more employees within a 75-mile radius of the location where Plaintiff worked.

103. As set forth above, Plaintiff took FMLA leave from January 1, 2025 through on or around March 26, 2025 in connection with her diagnosis of breast cancer.

104. By the actions described above, among others, Defendants unlawfully retaliated against Plaintiff for exercising her rights under the FMLA by, *inter alia*, terminating her employment five months after she returned to work.

105. Defendants' unlawful retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the

FMLA.

106. As a direct and proximate result of Defendants' unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, liquidated damages, and recovery of her reasonable attorneys' fees and costs.

## SECOND CAUSE OF ACTION
## CFRA: RETALIATION
***Against Defendant Regeneron***

107. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

108. During the full statutory period, Plaintiff was protected by the provisions of the CFRA and all applicable regulations thereunder.

109. During the full statutory period, Defendant Regeneron was an employer covered by the CFRA.

110. During Plaintiff's employment with Defendant Regeneron, Plaintiff was eligible to take CFRA protected leave.

111. During Plaintiff's employment, with Defendant Regeneron, Plaintiff exercised her right to take leave for a qualifying CFRA purpose, for her own serious health condition.

112. Defendant Regeneron took adverse actions against Plaintiff in retaliation for Plaintiff's exercise of her right to CFRA leave, including, *inter alia*, terminating her employment.

113. Defendant Regeneron's conduct violated Plaintiff's rights under the CFRA.

114. The acts of oppression, fraud, and/or malice were engaged in by employees and agents of Defendant Regeneron. Defendant Regeneron had advance knowledge of the unfitness of

each employee and/or agent who acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice. The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, and/or malice was committed by or on part of an officer, director, or managing agent of Defendant Regeneron, thereby entitling Plaintiff to punitive and exemplary damages against Defendant Regeneron in accordance with California Civil Code § 3294, in a sum appropriate to punish and make an example out of Defendant Regeneron.

115. As a direct and proximate result of Defendant Regeneron's unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, liquidated damages, and recovery of her reasonable attorneys' fees and costs.

**THIRD CAUSE OF ACTION**
**FEHA: DISABILITY DISCRIMINATION**
***Against Defendant Regeneron***

116. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

117. During the full statutory period, Plaintiff was protected by the provisions of the FEHA and all applicable regulations thereunder.

118. During the full statutory period, Defendant Regeneron was subject to the provisions of the FEHA and all applicable regulations thereunder.

119. At all relevant times, Plaintiff was willing and able to perform the essential job duties of her position with or without reasonable accommodations.

120. Defendant Regeneron knew and/or treated Plaintiff as if she had a disability that limited her ability to perform major life activities as set forth herein.

121. By the actions described above, among others, Defendant discriminated against Plaintiff based on her actual or perceived disabilities in violation of the FEHA by, *inter alia*, terminating her employment.

122. Defendant's unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under FEHA.

123. The acts of oppression, fraud, and/or malice were engaged in by employees and agents of Defendant Regeneron. Defendant had advance knowledge of the unfitness of each employee and/or agent who acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice. The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, and/or malice was committed by or on part of an officer, director, or managing agent of Defendant, thereby entitling Plaintiff to punitive and exemplary damages against Defendant in accordance with California Civil Code § 3294, in a sum appropriate to punish and make an example out of Defendant.

124. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, and recovery of her reasonable attorneys' fees and costs.

## FOURTH CAUSE OF ACTION
## FEHA: MEDICAL CONDITION

**DISCRIMINATION**
***Against Defendant Regeneron***

125. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

126. During the full statutory period, Plaintiff was protected by the provisions of the FEHA and all applicable regulations thereunder.

127. During the full statutory period, Defendant Regeneron was subject to the provisions of the FEHA and all applicable regulations thereunder.

128. At all relevant times, Plaintiff was willing and able to perform the essential job duties of her position with or without reasonable accommodations.

129. At all relevant times, Plaintiff suffered from a medical condition (breast cancer) as defined by California Government Code § 12926(i).

130. By the actions described above, among others, Defendant discriminated against Plaintiff based on her actual or perceived medical condition, including but not limited to breast cancer, in violation of the FEHA by, *inter alia*, terminating her employment.

131. Defendant's unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under FEHA.

132. The acts of oppression, fraud, and/or malice were engaged in by employees and agents of Defendant Regeneron. Defendant had advance knowledge of the unfitness of each employee and/or agent who acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice. The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, and/or malice was committed by

or on part of an officer, director, or managing agent of Defendant, thereby entitling Plaintiff to punitive and exemplary damages against Defendant in accordance with California Civil Code § 3294, in a sum appropriate to punish and make an example out of Defendant.

133. As a direct and proximate result of Defendant's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, and recovery of her reasonable attorneys' fees and costs.

**FIFTH CAUSE OF ACTION**
**FEHA: FAILURE TO ACCOMMODATE**
***Against Defendant Regeneron***

134. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

135. During the full statutory period, Plaintiff was protected by the provisions of the FEHA and all applicable regulations thereunder.

136. During the full statutory period, Defendant Regeneron was subject to the provisions of the FEHA and all applicable regulations thereunder.

137. California Government Code § 12950(m) makes it unlawful "[f]or an employer or other entity […] to fail to make reasonable accommodation for the known physical or mental disability of an […] employee."

138. As set forth above, Plaintiff was disabled and/or perceived to be disabled while employed by Defendant Regeneron.

139. Defendant Regeneron knew and/or treated Plaintiff as if she had a disability that limited her ability to perform major life activities as set forth herein.

140. At all relevant times, Plaintiff was willing and able to perform the essential job

duties of her position if a reasonable accommodation had been made by Defendant Regeneron.

141. At no time would the performance of the functions of the employment position, with a reasonable accommodation for Plaintiff's disability, have been a danger to Plaintiff's or any other person's health or safety, nor would it have created an undue hardship to the operation of Defendant Regeneron's business.

142. However, Defendant Regeneron failed to provide Plaintiff with any accommodation pursuant to an interactive process.

143. Defendant Regeneron's unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under FEHA.

144. The acts of oppression, fraud, and/or malice were engaged in by employees and agents of Defendant Regeneron. Defendant Regeneron had advance knowledge of the unfitness of each employee and/or agent who acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice. The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, and/or malice was committed by or on part of an officer, director, or managing agent of Defendants, thereby entitling Plaintiff to punitive and exemplary damages against Defendant in accordance with California Civil Code § 3294, in a sum appropriate to punish and make an example out of Defendants.

145. As a direct and proximate result of Defendant Regeneron's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, and

recovery of her reasonable attorneys' fees and costs.

**SIXTH CAUSE OF ACTION**
**FEHA: RETALIATION**
***Against Defendant Regeneron***

146. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

147. During the full statutory period, Plaintiff was protected by the provisions of the FEHA and all applicable regulations thereunder.

148. During the full statutory period, Defendant Regeneron was subject to the provisions of the FEHA and all applicable regulations thereunder.

149. As set forth above, Plaintiff engaged in protected activities under the FEHA by, *inter alia*, requesting and taking medical leave.

150. By the actions described above, among others, Defendant Regeneron retaliated against Plaintiff for engaging in protected activities by, *inter alia*, terminating her employment five months after she returned to work.

151. Defendant Regeneron's unlawful retaliatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the FEHA.

152. The acts of oppression, fraud, and/or malice were engaged in by employees and agents of Defendant Regeneron. Defendant Regeneron had advance knowledge of the unfitness of each employee and/or agent who acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice. The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, and/or malice was committed by

or on part of an officer, director, or managing agent of Defendant Regeneron, thereby entitling Plaintiff to punitive and exemplary damages against Defendant Regeneron in accordance with California Civil Code § 3294, in a sum appropriate to punish and make an example out of Defendant Regeneron.

153. As a direct and proximate result of Defendant Regeneron's unlawful retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, and recovery of her reasonable attorneys' fees and costs.

**SEVENTH CAUSE OF ACTION**
**FEHA: FAILURE TO PREVENT DISCRIMINATION AND RETALIATION**
***Against Defendant Regeneron***

154. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

155. At all relevant times, Plaintiff was protected by the provisions of the FEHA and all applicable regulations thereunder.

156. At all relevant times, Defendant Regeneron was subject to the provisions of the FEHA and all applicable regulations thereunder.

157. California Government Code § 12940(k) makes it an unlawful employment practice for an employer to "fail to take all reasonable steps to prevent discrimination and harassment from occurring."

158. This provision also makes it unlawful for an employer to fail to prevent retaliation.

159. Defendant Regeneron violated this provision by failing to prevent discrimination and retaliation against Plaintiff, as described above.

160. Defendant Regeneron's unlawful actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights under the FEHA.

161. The acts of oppression, fraud, and/or malice were engaged in by employees and agents of Defendant Regeneron. Defendant Regeneron had advance knowledge of the unfitness of each employee and/or agent who acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice. The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, and/or malice was committed by or on part of an officer, director, or managing agent of Defendants, thereby entitling Plaintiff to punitive and exemplary damages against Defendant in accordance with California Civil Code § 3294, in a sum appropriate to punish and make an example out of Defendants.

162. As a direct and proximate result of Defendant Regeneron's unlawful conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, and recovery of her reasonable attorneys' fees and costs.

**EIGHTH CAUSE OF ACTION**
**WRONGFUL TERMINATION**
**IN VIOLATION OF PUBLIC POLICY**
***Against Defendant Regeneron***

163. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

164. At all relevant times, it was a fundamental policy of the State of California to prohibit and prevent discrimination and retaliation by Defendant Regeneron against any employee, including, *inter alia*, Plaintiff, on the basis of disability, perceived disability, medical condition and engagement in protected activity including protected leave.

165. By the actions described herein, among others, Defendant Regeneron discriminated and retaliated against Plaintiff based on her actual or perceived disabilities, her medical condition, her need for reasonable accommodation, and her taking of medical leave in violation of California public policy by, *inter alia*, terminating her employment.

166. Defendant Regeneron's unlawful discriminatory actions were intentional, done with malice, and/or showed a deliberate, willful, wanton, and reckless indifference to Plaintiff's rights.

167. The acts of oppression, fraud, and/or malice were engaged in by employees and agents of Defendant Regeneron. Defendant Regeneron had advance knowledge of the unfitness of each employee and/or agent who acted with oppression, fraud, and/or malice, and/or authorized or ratified the wrongful conduct for which an award of punitive damages is sought, and/or was personally guilty of oppression, fraud, and/or malice. The advance knowledge and conscious disregard, authorization, ratification, or act of oppression, fraud, and/or malice was committed by or on part of an officer, director, or managing agent of Defendant Regeneron, thereby entitling Plaintiff to punitive and exemplary damages against Defendant Regeneron in accordance with California Civil Code § 3294, in a sum appropriate to punish and make an example out of Defendant Regeneron.

168. As a direct and proximate result of Defendant Regeneron's unlawful discriminatory conduct, Plaintiff has suffered and continues to suffer harm for which she entitled to an award of

damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, and recovery of her reasonable attorneys' fees and costs.

**NINTH CAUSE OF ACTION**
**LABOR CODE §§ 233 AND 246.5 – DISCRIMINATION AND RETALIATION**
***Against Defendant Regeneron***

169. Plaintiff hereby repeats and realleges the foregoing allegations as if set forth fully herein.

170. During the full statutory period, Plaintiff was protected by the provisions of Labor Code §§ 233, 234, and 246.5 and all applicable rules and regulations thereunder.

171. During the full statutory period, Defendant Regeneron was subject to the provisions of Labor Code §§ 233, 234, and 246.5 and all applicable rules and regulations thereunder.

172. Labor Code §§ 233 and 246.5 prohibits employers, including Defendant Regeneron, from discharging or in any manner discriminating or retaliating against any employee, including Plaintiff, *inter alia*, "for using accrued sick days."

173. As set forth above, Plaintiff took FMLA leave and short-term disability leave in connection with her disabilities, as well as accrued sick days.

174. Defendant Regeneron discriminated and retaliated against Plaintiff for her protected activities in violation of Labor Code § 246.6 by, *inter alia*, terminating her employment.

175. As a direct and proximate result of Defendant Regeneron's unlawful, discriminatory, and retaliatory conduct, Plaintiff has suffered and continues to suffer harm for which she is entitled to an award of damages to the greatest extent permitted by law, including, without limitation, economic damages, prejudgment interest, compensatory damages for emotional distress, punitive damages, liquidated damages, and recovery of her reasonable attorneys' fees and

costs.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Declare that the practices complained of herein are unlawful under applicable federal and State law;

B. Grant an injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

C. Grant Plaintiff an award of damages in an amount to be determined at trial to compensate her for her economic loss;

D. Grant Plaintiff an award of damages in an amount to be determined at trial to compensate her for all non-monetary and/or compensatory damages she has suffered, including, without limitation, compensation for her mental anguish, humiliation, embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

E. Grant Plaintiff an award of damages in an amount to be determined at trial for any and all other monetary and/or non-monetary losses she has suffered;

F. Grant Plaintiff an award of prejudgment interest where applicable;

G. Grant Plaintiff an award of punitive damages in an amount to be determined at trial;

H. Grant Plaintiff an award of liquidated damages in an amount to be determined at trial;

I. Grant Plaintiff an award of reasonable attorneys' fees to the greatest extent permitted by law;

J. Grant Plaintiff an award of reasonable costs that she has incurred in this action, including, without limitation, expert witness fees;

K. Grant Plaintiff all other available damages to the greatest extent permitted by law;

and

L. Grant such other and further relief as the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands a trial by jury on all issues of fact and damages.

Dated: April 14 2026
New York, New York

**GRUBIN LAW GROUP, P.C.**

By: ______________________

Scott G. Grubin
Rita Lenane-Massey

1270 Avenue of the Americas, Floor 7
New York, New York 10020
Telephone: (212) 653-0631
sgrubin@grubinlaw.com
rlmassey@grubinlaw.com